UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEICO GENERAL INSURANCE
COMPANY,

       Plaintiff,

vs.

CAROL OSTING SCHWINN,
individually, and as parent and
natural guardian of CODY OSTING,
a minor, and FREDERICK SCHWINN,

       Defendants,

and                                  Case No. 8:04-cv-01485-EAK-TBM

CAROL OSTING SCHWINN,
individually, and as parent and
legal guardian of CODY OSTING,
a minor,

       Plaintiffs-in-Counterclaim,

vs.

GEICO GENERAL INSURANCE
COMPANY,

       Defendant-in-Counterclaim,

and

FREDERICK SCHWINN,

       Plaintiff-in-Counterclaim,

vs.

GEICO GENERAL INSURANCE
COMPANY,

       Defendant-in-Counterclaim.

_____/

**GEICO GENERAL INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT IN THE ACTION AND IDENTICAL COUNTER-ACTIONS
(WITH INCORPORATED MEMORANDUM OF LAW)**

GOVERNMENT EMPLOYEES INSURANCE COMPANY ("GEICO General"), by and through its undersigned counsel, and pursuant to Fed.R.Civ.P. 56(c) and Local Rule 3.01(g), hereby requests that this Court enter Summary Judgment in favor of GEICO General and against CAROL OSTING SCHWINN, individually, and as parent and natural and legal guardian of CODY OSTING, a minor, ("Osting" and "minor Osting") and FREDERICK SCHWINN ("Schwinn," and together with Osting and the minor Osting, collectively, "Counter-Petitioners"), in GEICO General's instant action for declaratory relief and in Counter-Petitioners' identical counter-actions for declaratory relief, and grant the declaratory relief requested in GEICO General's First Amended Complaint for Declaratory Relief [Dkt.#25] ("Petition"), and deny the declaratory relief requested in Osting's Amended Counterclaim for Declaratory Relief Against GEICO General [Dkt.#26] ("Osting's Counter-Petition") to the extent that the same is inconsistent with the relief requested in the Petition [Dkt.#25], and deny the declaratory relief requested in Schwinn's amended Counterclaim for Declaratory Relief Against GEICO General [Dkt.#27] ("Schwinn's Counter-Petition") to the extent that the same is inconsistent with the relief requested in the Petition [Dkt.#25], as reasons therefor states as follows:

## I.     UNDISPUTED FACTS.

1.      The instant action and identical counter-actions are brought under the provisions of 28 U.S.C. § 2201 to determine the rights and duties of GEICO General and the Counter-Petitioners under the uninsured motorist ("UM") provisions of Counter-Petitioners' personal automobile liability insurance policy no. 33670380, issued in the State of Florida by GEICO General to Schwinn as the "Named Insured" thereunder ("policy").  *See* Petition [Dkt.#25], ¶ 8 & Exhibit "A" thereto; Osting's Counter-Petition [Dkt.#26] at the unnumbered paragraph immediately preceding para. no.1 of the same, & ¶¶ 5-7; Schwinn's Counter-Petition [Dkt.#27], at the unnumbered paragraph immediately preceding para. no.1 of the same, & ¶¶ 4-6.

2.      A true and correct copy of the policy and declarations page collectively are attached to

the Petition [Dkt.#25] as Exhibit "A." *See* id. at ¶ 2 & Exh.A thereto.[1]

3.      The policy has UM limits of $25,000.00 per person/$50,000.00 per occurrence, stacked, times two (2) automobiles, which changes the total UM limits of the policy to $50,000.00 per person/$100,000.00 per occurrence. *See* Petition [Dkt.#25], ¶ 9 & Exh.A thereto; Osting's Counter-Petition [Dkt.#26],¶ 7; Schwinn's Counter-Petition [Dkt.#27],¶ 6.

4.      GEICO General contends that there ***is no*** coverage available under the policy for the incident hereinafter described and Counter-Petitioners contends that there ***is*** coverage available under the policy for the incident hereinafter described. *See* Petition [Dkt.#25](*passim*); Osting's Counter-Petition [Dkt.#26](*passim*); Schwinn's Counter-Petition [Dkt.#27](*passim*).

5.      This Court already has determined, and GEICO General, Osting, and Schwinn concur, that, this Court has jurisdiction over the instant action and identical counter-actions pursuant to 28 U.S.C. § 1332. *See* Court (Kovachevich, J.) Order of 11/18/2004 [Dkt.#9], Petition [Dkt.#25], ¶ 8; Osting's Counter-Petition [Dkt.#26], ¶ 3; Schwinn's Counter-Petition [Dkt.#27], ¶ 4.

6.      The policy's effective date is December 19, 2001, and the policy period was from December 19, 2001 to June 19, 2002. *See* Petition [Dkt.#25], ¶ 13 & Exh.A thereto.

7.      The policy pertained to a 1976 Chevrolet, bearing Vehicle Identification No. ("VIN") CKU246S100873, and also listed a 1966 Ford, bearing VIN 6A42C275648. *See* Petition [Dkt.#25], ¶ 14 & Exh.A thereto.

8.      On or about May 7, 2002, on Narron Lane, Plant City, Hillsborough County, Florida ("Narron Lane"), the minor, CODY OSTING, while driving a 4-wheel off-road vehicle, bearing VIN RFWAT17C01T007890 ("off-road 4-wheeler"), collided with a 2000 Yamaha YZ125 off-road competition motorcycle, bearing VIN JYACE05CXYA003135 ("dirt bike"), which was owned by and being driven by Michael D. Rockhill. (This collision hereinafter is referred to as

---

[1]Although Osting's Counter-Petition [Dkt.#26] and Schwinn's Counter-Petition [Dkt.#27] are replete with denials that Exhibit "A" of the Petition [Dkt.#25] ***is not*** a true and correct copy of the policy and declarations page (*see* id., *passim*), Counter-Petitioners are estopped from denying GEICO General's party admission that Exhibit "A" of the Petition [Dkt.#25] ***is*** a true and correct copy of the policy and declarations page.

"accident").  *See* Petition [Dkt.#25], ¶ 15; Osting's Answer to GEICO General's Petition [Dkt.#26] ("Osting's Answer"), ¶ 15; Schwinn's Answer to GEICO General's Petition [Dkt.#27] ("Schwinn's Answer"), ¶ 15.

9.       The minor Osting sustained personal injuries from the accident.  *See* Petition [Dkt.#25], ¶ 16; Osting's Counter-Petition [Dkt.#26], ¶ 9; Schwinn's Counter-Petition [Dkt.#27], ¶ 8.

10.      The off-road 4-wheeler is designed for use principally off public roads.  *See* Petition [Dkt.#25], ¶ 17; Osting's Answer [Dkt.#26], ¶ 17; Schwinn's Answer [Dkt.#27], ¶ 17.

11.      At the time of the accident, the off-road 4-wheeler was principally garaged in the State of Florida.  *See* Petition [Dkt.#25], ¶ 18; Osting's Answer [Dkt.#26], ¶ 18; Schwinn's Answer [Dkt.#27], ¶ 18.

12.      The off-road 4-wheeler is not a "motor vehicle" as the term "motor vehicle" is defined under the Florida Motor Vehicle Financial Responsibility Law, specifically, section 324.021, Florida Statutes.  *See* Petition [Dkt.#25], ¶ 19; Osting's Answer [Dkt.#26], ¶ 19; Schwinn's Answer [Dkt.#27], ¶ 19.

13.      At the time of the accident, the off-road 4-wheeler had no liability bond and had no insurance policy applicable with liability limits complying with the Florida Motor Vehicle Financial Responsibility Law.  *See* Petition [Dkt.#25], ¶ 20; Osting's Answer [Dkt.#26], ¶ 20; Schwinn's Answer [Dkt.#27], ¶ 20.

14.      At the time of the accident, the off-road 4-wheeler was not registered and was not licensed for operation upon the public highways by the State of Florida or by any other governmental entity.  *See* Petition [Dkt.#25], ¶ 21; Osting's Answer [Dkt.#26], ¶ 21; Schwinn's Answer [Dkt.#27], ¶ 21.

15.      The dirt bike is designed for use principally off public roads. *See* Petition [Dkt.#25], ¶ 22; deposition transcript ("dep.") of Deputy Bryan Custer, Hillsborough County Sheriff's Office ("Deputy Custer") of 4/20/2005, at pp. 25:17 through 26:5; GEICO General's Supplemental Expert Witness Disclosures Pursuant to Fed.R.Civ.P. 26(a)(2), together with Exhibits "A"

through "D" thereof, disclosing the expert opinions of G. Bryant Buchner, P.E., and other matters required by Fed.R.Civ.P. 26(a)(2) (collectively, "GEICO General's Expert Disclosures").

16.     At the time of the accident, the dirt bike was principally garaged in the State of Florida. *See* Petition [Dkt.#25],¶ 23; Michael D. Rockhill, Jr. ("Rockhill") dep. of 4/22/2005, at p.12:5-7; pp. 22:5 through 29:25; pp. 32:9 through 34:23.

17.     The dirt bike is not a "motor vehicle" as the term "motor vehicle" is defined  under the Florida Motor Vehicle Financial Responsibility Law, section 324.021, Florida Statutes. *Compare* § 324.021, Fla.Stat.(2004) *with* Rockhill dep. of 4/22/2005, at pp. 26:3 through 29:25.

18.     At the time of the accident, the dirt bike had no liability bond and had no insurance policy applicable with liability limits complying with the Florida Motor Vehicle Financial Responsibility Law.  *Compare* § 324.021,Fla.Stat. (2004) *with* Rockhill dep. of 4/22/2005, at pp. 26:3 through 29:25; *see also,* Deputy Custer dep. of 4/20/2005, at pp. 25:17 through 28:13; Petition [Dkt.#25], ¶ 25.

19.     At the time of the accident, the dirt bike was not registered and was not licensed for operation upon the public highways by the State of Florida or by any other governmental entity. *See* Deputy Custer dep. of 4/20/2005, at pp. 25:17 through 28:13; Rockhill dep. of 4/22/2005, at p. 12:5-7; pp. 22:5 through 29:25; pp. 32:9 through 34:23; Petition [Dkt.#25], ¶ 26.

20.     Narron Lane is a privately owned unpaved road, right of entry, easement or the like.  *See* Osting dep. of 4/20/2005, at p. 49:17-23; Schwinn dep. of 4/22/2005, at p. 30:9-11; Deputy Custer dep. of 4/20/2005, at pp. 7:3 through 24:5; p. 25:1-13; Rockhill dep. of 4/22/2005, at p. 22:8-16; GEICO General's Expert Disclosures; Petition [Dkt.#25], ¶ 27.

21.     Narron Lane is not owned by and is not maintained by Plant City.  *See* Osting dep. of 4/20/2005, at p. 49:17-23; Schwinn dep. of 4/22/2005, at p. 30:9-11; Deputy Custer dep. of 4/20/2005, at pp. 7:3 through 24:5; p. 25:1-13; Rockhill dep. of 4/22/2005, at p. 22:8-16; GEICO General's Expert Disclosures; *see* Petition [Dkt.#25], ¶ 28.

22.     Narron Lane is not owned by and is not maintained by Hillsborough County.  *See* Osting

5

dep. of 4/20/2005, at p. 49:17-23; Schwinn dep. of 4/22/2005, at p. 30:9-11; Deputy Custer dep. of 4/20/2005, at pp. 7:3 through 24:5; p. 25:1-13; Rockhill dep. of 4/22/2005, at p. 22:8-16; GEICO General's Expert Disclosures; Petition [Dkt.#25], ¶ 29.

23.     Narron Lane is not owned by and is not maintained by the State of Florida. *See* Osting dep. of 4/20/2005, at p. 49:17-23; Schwinn dep. of 4/22/2005, at p. 30:9-11; Deputy Custer dep. of 4/20/2005, at pp. 7:3 through 24:5; p. 25:1-13; Rockhill dep. of 4/22/2005, at p. 22:8-16; GEICO General's Expert Disclosures; Petition [Dkt.#25], ¶ 30.

24.     Approximately twenty-two (22) months after the accident, on or about February 3, 2004, the Defendants, by and through counsel, notified GEICO General of the accident and initiated a claim with GEICO General under the UM provisions of the policy for the personal injuries that the minor Osting sustained from the accident. *See* Petition [Dkt.#25], ¶ 31; Osting's Answer [Dkt.#26], ¶ 31; Schwinn's Answer [Dkt.#27], ¶ 31.

25.     On or about April 22, 2004, Counter-Petitioners, through counsel, made their initial demand that GEICO General tender the full amount of UM policy limits available for the accident. *See* Petition [Dkt.#25], ¶ 32; Osting's Answer [Dkt.#26], ¶ 32; Schwinn's Answer [Dkt.#27], ¶ 32.

26.     The policy contains certain exclusions which, pursuant to interpretation of said exclusions by Florida law, GEICO General reasonably believes that no coverage exists under the UM provisions of the policy for the claims asserted by Defendants, as follows:

> **SECTION IV - UNINSURED MOTORIST COVERAGE**
> ...
> **DEFINITIONS**
> ...
> 6.   ***"Uninsured auto"*** is an auto:
>> (a)     which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the ***state*** in which the ***insured auto*** is principally garaged at the time of the accident; or
>>
>> (b)     for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an ***insured***; or

(c)    A **_hit-and-run auto_**.

...

The term **_"uninsured auto"_** does not include:

...

(e)    a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

_See_ Petition [Dkt.#25], ¶ 34 & Exh.A thereto;[2] Osting's Counter-Petition [Dkt.#26], ¶ 14; Schwinn's Counter-Petition [Dkt.#27], ¶ 13.

27.     As a result of the operation of said exclusions and the interpretation of said exclusions by Florida law, GEICO General reasonably believes that it has no obligation to provide coverage to the Defendants and owes no benefits under the UM provisions of the policy, but Counter-Petitioners disagree.   _See_ Petition [Dkt.#25](_passim_); Osting's Counter-Petition [Dkt.#26] (_passim_); Schwinn's Counter-Petition [Dkt.#27](_passim_).

As addressed more fully in GEICO General's incorporated memorandum of law herein below, the undisputed material facts in this case  unequivocally show that the Counter-Petitioners' claims are excluded from coverage under the UM provisions of the subject policy as a matter of law.  Accordingly, this Court should enter summary judgment in favor of GEICO General and against Counter-Petitioners in both GEICO General's instant action for declaratory relief and Counter-Petitioners' identical counter-actions for declaratory relief as a matter of law.

WHEREFORE, GOVERNMENT EMPLOYEES INSURANCE COMPANY, requests that this Court enter Summary Judgment in its favor and against CAROL OSTING SCHWINN, individually, and as parent and natural and legal guardian of CODY OSTING, a minor, and against FREDERICK SCHWINN, in the instant action for declaratory relief and in the identical counter-actions for declaratory relief, grant the declaratory relief requested in the Petition [Dkt.# 25], and deny the declaratory relief requested in the two Counter-Petitions [Dkt.#26 & Dkt.#27] to the extent that the same are inconsistent with the relief requested in the Petition [Dkt.#25].

---

[2]_See_ n.1, _supra._

## <u>INCORPORATED MEMORANDUM OF LAW</u>

**II.    STANDARD FOR SUMMARY JUDGMENT.**

Rule 56(c) of the Federal Rule of Civil Procedure provides for the granting of summary judgment "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P.56(c); *see also,* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11[th]Cir.1997)(*citing* <u>Andersen v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11[th]Cir.1992)). An issue of material fact is "'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." <u>Allen</u>, 121 F.3d at 646. (citations omitted).

Initially, the burden is on the moving party to "show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial." <u>Mullins v. Crowell</u>, 228 F.3d 1305, 1313 (11th Cir.2000)(*citing* <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir.1991)).  A common way for the moving party to meet its burden is by demonstrating that the non-moving party cannot show an essential element of his case.  *See* <u>Riley v. Newton</u>, 94 F.3d 632, 638-639 (11th Cir.1996).  In determining whether the burden has been met, the court must view the moving party's evidence and the factual inferences arising therefrom "in the light most favorable to the nonmoving party." <u>Allen</u>,121 F.3d at 646.

Once the moving party has satisfied its burden, the burden shifts to the nonmoving party who must show "that summary judgment would be inappropriate because there exists a material issue of fact." <u>Mullins</u>, 228 F.3d at 1313.  The non-movant can meet this burden by presenting enough evidence to show that a reasonable finder of fact could find for the non-movant.  *See* <u>Allen</u>, 121 F.3d at 646.  This showing is equivalent to the requirement for withstanding a directed verdict.  *See* <u>Anderson</u>, 477 U.S. at 251.  The basic inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

## III.   INTERPRETATION OF EXCLUSIONARY CLAUSES CONTAINED IN AUTOMOBILE LIABILITY INSURANCE POLICIES UNDER FLORIDA LAW.

"The construction of an insurance policy is a question of law...." Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla.1985). Although a question about the object of the exclusion may be a question of fact, whether the object itself falls within the scope of the exclusionary clause is a question of law. Cf. Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So.2d 700, 701 (Fla.1993). Further, insurance contracts are construed in accordance with "the plain language of the policy as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 33 (Fla.2000)(quoting Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993)).

However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. See Anderson, 756 So.2d at 34; Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003). Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. See Anderson, 756 So. 2d at 34; State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998); Stuyvesant Ins. Co. v. Bulter, 314 So.2d 567 (Fla.1975). Furthermore, ambiguous "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." Anderson, 756 So. 2d at 34; see also, Demshar v. AAA Con Auto Trans., Inc., 337 So.2d 963, 965 (Fla.1976) ("Exclusionary clauses in liability insurance policies are always strictly construed"). However, the mere fact that a term set forth in an exclusionary clause is not defined or susceptible to more than one interpretation does not render such a term ambiguous and courts are permitted to construe the same pursuant to its plain meaning. See Deni Assocs. of Florida, Inc., 711 So.2d at 1138. To be sure, the Florida Supreme Court explained the rule of construction and held:

In State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245 (Fla.1986), this Court announced the rule to be followed in the interpretation of exclusionary clauses in insurance policies:

> Exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 942 (Fla.1979). However, "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. ***It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.*** [Pridgen,] 498 So.2d at 1248.

Deni Assocs., 711 So.2d at 1138.  (emphasis added).

As addressed more fully herein below, the undisputed material facts in this case unequivocally show that the Counter-Petitioners' claims are excluded from coverage under the UM provisions of the subject policy as a matter of law.  Accordingly, this Court should enter summary judgment in favor of GEICO General and against Counter-Petitioners in both GEICO General's instant action for declaratory relief and Counter-Petitioners' identical counter-actions for declaratory relief as a matter of law.

## ARGUMENT

### IV.  COUNTER-PETITIONERS' CLAIMS UNDER THE UNINSURED MOTORIST PROVISIONS OF THEIR AUTOMOBILE LIABILITY POLICY ARE EXCLUDED.

The facts and circumstances of the accident in the instant action and identical counter-actions (collectively, "instant action") causes the Counter-Petitioners' claims to fall outside the scope of coverage under the UM provisions of the policy and therefore, GEICO General is entitled to entry of summary judgment in its favor and against the Counter-Petitioners' instant action as a matter of law.  Specifically, the policy contains certain exclusions which, pursuant to interpretation of said exclusions by Florida law, no coverage exists as a matter of law as follows:

**SECTION IV - UNINSURED MOTORIST COVERAGE**
...
**DEFINITIONS**
...

6. ***"Uninsured auto"*** is an auto:

    (a)    which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the ***state*** in which the ***insured auto*** is principally garaged at the time of the accident; or

    (b)    for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an ***insured***; or

    (c)    A ***hit-and-run auto***.
    ...
The term ***"uninsured auto"*** does not include:
    ...
    (e)    a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

*See* Petition [Dkt.#25], ¶ 34 & Exh.A thereto (emphasis supplied); Osting's Counter-Petition [Dkt.#26], ¶ 14; Schwinn's Counter-Petition [Dkt.#27], ¶ 13.

The facts presented in the declaratory action of <u>Allstate Ins. Co. v. Almgreen</u> are very similar to the ones presented in instant action; specifically, a resident relative (wife) of the named insured under a personal automobile liability policy brought a claim against their UM insurer seeking coverage under the UM provisions of the policy for personal injuries she sustained from being struck on private property by an unregistered, uninsured motorcycle designed for off-road use only. *See* <u>Almgreen</u>, 376 So.2d 1184, 1185 (Fla.2[d] DCA 1979), *overruled in part by* <u>Carguillo v. State Farm Mut. Auto. Ins. Co.</u>, 529 So.2d 276 (Fla.1988). The definition of an uninsured vehicle and the UM exclusionary clause at issue in <u>Almgreen</u> are virtually identical to the UM exclusionary clause presented in the instant action; specifically, as described by the Florida Second District Court of Appeal ("Second DCA"), the same provided:

The parties entered into a contract of insurance providing uninsured motorist coverage for accidents with uninsured motor vehicles, defined as:

A motor vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the Financial Responsibility Law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident....

The policy goes on to exclude from the motor vehicle definition "a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads."

Almgreen, 376 So.2d at 1185, *overruled in part by* Carguillo, 529 So.2d 276 (Fla.1988). (ellipsis in original).

The Second DCA examined the aforesaid UM exclusionary clause, determined that it was ambiguous, and as there was no definition of "motor vehicle" under the policy, the Florida UM statute (§ 627.727, Fla.Stat.(1979)), or case law existing at the time, interpreted the same pursuant to the ordinary meaning of "motor vehicle," as defined by divers dictionaries as follows:

We note that the exclusion for ***"a farm type tractor or equipment designed for use principally off public roads..."*** is ambiguous. The phrase could exclude (farm type tractors), or (equipment designed for off-road use), so as to exclude the injuries to appellees. But the phrase can equally well be taken to mean farm type (tractors or equipment), designed for off-road use. ***Since the motorcycle at issue is neither a farm tractor nor farm equipment, the latter interpretation of the exclusion would not apply***. We are bound to interpret the policy ambiguity in favor of the insured. Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla.1975). ***We thus hold that the policy exclusion does not preclude coverage for the uninsured motorcycle below.***

***The only remaining policy language which needs discussion is whether an off-road motorcycle is a motor vehicle.*** The policy contains no definition of this term, and we must look to its ordinary meaning. A motor vehicle is "(a)ny self-propelled wheeled conveyance that does not run on rails." The AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, at 857 (1973). *Accord,* I LINCOLN LIBRARY DICTIONARY, at 831 (1970). Our research also reveals two dictionaries which limit the term to conveyances driven on roads. The RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, at 934 (1967); II WORLD BOOK DICTIONARY, at 1356 (1977). ***We hold the term ambiguous as to whether appellant's off-road vehicle is included, and construe the term in favor of the insured to include the motorcycle.*** Stuyvesant Ins. Co. v. Butler, *supra.*

Nor is that definition precluded by statute or prior case. Nothing prevents appellant from issuing a policy with broader coverage than that required by statute. The statute requiring uninsured motorist coverage contains no definition of motor vehicle. Section 627.727, Fla.Stat. (1977). ***Since we find that appellant's policy provides coverage, we do not address whether the statute requires coverage in this instance.*** But we note that the statute requires uninsured motorist benefits for each policy issued on a vehicle Registered or garaged in this state, to protect persons entitled to recover from owners of "uninsured motor vehicles."

12

Almgreen,376 So.2d at 1185-1186, *overruled in part by* Carguillo 529 So.2d 276 (Fla. 1988). (emphasis added). (ellipsis in original).

Based on its interpretation of the phrase "a farm type tractor or equipment designed for use principally off public roads..." as meaning (farm type tractors), or (equipment designed for off-road use), the Second DCA determined that off-road motorcycles fall within the exclusionary clause and therefore are excluded from the definition of "motor vehicle" under the UM provisions of the policy. *See* id. However, the Second DCA went on to find that the term, "motor vehicle," was ambiguous, construed the ordinary meaning of same in favor of the insured, and ultimately determined that off-road motorcycles fall within the definition of "*uninsured* 'motor vehicle'" under the UM provisions of the policy. *See* id. Most significantly, in Almgreen, the Second DCA centered its decision on public policy grounds and rejected in *dicta* the insurer's argument that the Court should interpret the term, "motor vehicle," as used in the UM exclusionary clause, *in pari materia* with the definition of "motor vehicle" from the Florida Motor Vehicle Financial Responsibility Law, section 324.021, Florida Statutes, as follows:

> Appellant urges that the definition of "motor vehicle" from the registration and financial responsibility statutes should be used. We find that these definitions could not have been contemplated by the policy, because the policy specifically includes unregistered vehicles within the definition of motor vehicles when such vehicles are used on public roads. Further, the Financial Responsibility Law, Section 324.021, Fla.Stat. (1977), restricts that definition to the purpose of that chapter. This court has previously held that the Financial Responsibility Laws are not to be read *in pari materia* to the uninsured motorist laws. Johns v. Liberty Mut. Fire Ins. Co., 337 So.2d 830 (Fla.2[d] DCA 1976)[, *cert. denied,*348 So.2d 949 (Fla.1977)]. The registration statute also provides that its definitions are to be used "in construing these statutes." Section 320.01, Fla.Stat. (1977). Further, the registration definition of motor vehicle is not exclusive. The statute states that motor vehicle "includes" certain types of vehicles. Section 320.01(1)(a), Fla.Stat. (1977). We reject these collateral definitions, written for other purposes, as controlling for uninsured motorist coverage.
>
> We do not believe coverage in the present instance to be repugnant to any consideration of public policy. Uninsured motorist coverage would protect appellant if she were struck by a registered vehicle on private property or an unregistered vehicle on a public road. It makes no difference to appellee whether the motorcycle which struck her was registered or not. Nor is the public served by making coverage dependent on whether an insured, struck by an unregistered

vehicle, was standing in a public road so as to have coverage, or a driveway or parking lot so as to lose coverage to appellant's attempted exclusion.  The public policy of the uninsured motorist statute is to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists.  Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229 (Fla.1971). The Court in Mullis noted that "the injury is just as acute and damaging to the member of the public whether he was injured as a pedestrian or while riding in a public conveyance or in an "'uninsured automobile'.' 252 So.2d at 233.  We add that the injury is identical when caused by an unregistered motorcycle or a registered one; in a parking lot as well as on the public streets.

Almgreen, 376 So.2d at 1186, *overruled in part by* Carguillo 529 So.2d 276 (Fla.1988). (parenthetical references to subsequent history added).

On the other hand, in the declaratory action of State Farm Fire & Cas. Co. v. Becraft, the Florida Fourth District Court of Appeal ("Fourth DCA") reached the opposite conclusion with regard to the definition of "motor vehicle" under the UM provisions of three (3) otherwise identical personal automobile liability policies, finding that "an uninsured motorist carrier can exclude coverage for a motor vehicle designed mainly for use off the public roads when the vehicle is being operated off the public roads at the time of the accident."  Becraft, 501 So.2d 1316, 1317 (Fla.4th DCA 1986), *aff'd,* Carguillo 529 So.2d 276 (Fla.1988).

Like Almgreen, the facts in Becraft are very similar to the ones presented in the instant action; specifically, a resident relative (minor son) of the named insured under the three otherwise identical personal automobile liability policies brought a claim against their UM insurer seeking coverage under the UM provisions of their three policies for personal injuries that their minor son sustained while riding as a passenger in a dune buggy that was owned and operated by a third person who rolled it over in a cane field off the public roads.[3]  *See* Becraft, 501 So.2d at 1317, *aff'd,* Carguillo, 529 So.2d 276 (Fla.1988).  Also, the definition of an uninsured vehicle and the UM exclusionary clauses at issue in Becraft for the most part are

---

[3]Although inapposite to determination of the instant action, GEICO General notes that the Fourth DCA also determined that PIP benefits were available to the insureds' injured minor son based upon the design and use of the dune buggy and the express PIP provisions under all three (3) policies, finding that unlike the statutory provisions for UM coverage, the definition of "motor vehicle" under § 627.732(1), pertaining to PIP coverage, placed the dune buggy within the PIP coverages.

similar to the UM exclusionary clause presented in the instant action for declaratory relief;

specifically, as described by the Fourth DCA, the same, in part, provided:

> The three State Farm policies provide that liability coverage is afforded for operation of a non-owned vehicle if it is one "designed for use mainly on public roads." Similarly, the policies do not provide UM and medical payments coverage when the vehicle is "designed for use mainly off public roads."

Id. at 1316.

The Fourth DCA examined these three identical UM exclusionary clauses in conjunction

with its review of the facts pertaining to the use and design of the dune buggy. Id. at 1317.

Couching its reasoning in terms of public policy, the Fourth DCA determined that the definition

of "uninsured motor vehicle" under the three policies should be read *in pari materia* with the

Florida UM statute, section 627.727, Florida Statutes, and held that the dune buggy fell outside

the penumbra of UM coverage. Id. To be sure, the Fourth DCA stated as follows:

> Unquestionably, the dune buggy involved here was primarily designed for use off the public highways, albeit it was usable on such highways, and was licensed therefor, and on occasion used thereon. Therefore, unless the Becrafts are correct in their contention that the policy provision defining "uninsured motor vehicle" is invalid because it contravenes the statutory law of Florida to the extent that it requires the vehicle to be designed for use *mainly* on the public roads, there simply is no UM coverage for this accident.
>
> We have considered Becrafts' contentions regarding the validity of the State Farm exclusion and find that, since the use sought to be avoided by the carrier did not involve the highways, or public roads of the state, the exclusion clause at issue here is not void for public policy reasons. The policy behind section 627.727, Florida Statutes, is to provide the insured motorist with at least the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law. Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 236 (Fla.1971). Because our motor vehicle financial responsibility law (Chapter 324, Florida Statutes) does not include off-road vehicles in its definition of motor vehicles, the carrier may exclude such vehicles when off public roads from its UM coverage without reducing such coverage below the level of protection that would have been provided if the tort-feasor had complied with the financial responsibility law. *See* Meeks v. Berkbuegler, 632 S.W.2d 24 (Mo. App.E.D.1982).

Becraft, 501 So.2d at 1317, *aff'd,* Carguillo 529 So.2d 276 (Fla.1988).

Consequently, the Second DCA and Fourth DCA had reached conflicting conclusions in

15

Almgreen and Becraft with regard to the issue of whether a vehicle designed primarily for off-road use can be excluded from UM coverage because the same is not an "*uninsured* 'motor vehicle'" as the term "motor vehicle" is defined under the Florida Motor Vehicle Financial Responsibility Law, specifically, section 324.021, Florida Statutes, or whether such an exclusion is void for public policy.  *See* Carguillo 529 So.2d 276 (Fla.1988)(*affirming* Becraft, 501 So.2d 1316 (Fla.4[th] DCA 1986) *and overruling in part,* Almgreen, 376 So.2d 1184 (Fla.2[d] DCA 1979)).

In Carguillo, the Florida Supreme Court granted *certiorari* to resolve the conflict between Almgreen and Becraft.  *See* Carguillo 529 So.2d 276 (Fla.1988)(*passim*)(*affirming* Becraft, 501 So.2d 1316 (Fla.4[th] DCA 1986) *and overruling in part,* Almgreen, 376 So.2d 1184 (Fla.2[d] DCA 1979)).  The question that was certified to the Florida Supreme Court in Carguillo is as follows:

> WHETHER A VEHICLE DESIGNED PRIMARILY FOR OFF-ROAD USE CAN BE EXCLUDED FROM UNINSURED MOTORIST COVERAGE BECAUSE IT IS NOT A "MOTOR VEHICLE" WITHIN THE DEFINITION OF THE FINANCIAL RESPONSIBILITY LAW OR WHETHER SUCH AN EXCLUSION IS VOID FOR PUBLIC POLICY REASONS?

Carguillo 529 So.2d at 277 (*affirming* Becraft, 501 So.2d 1316 (Fla.4[th] DCA 1986) *and overruling in part,* Almgreen, 376 So.2d 1184 (Fla.2[d] DCA 1979)).

Like the facts in Almgreen and Becraft, the facts in Carguillo are very similar to the ones presented in the instant action.  Specifically, the named insured under a personal automobile liability policy brought a claim against his UM insurer seeking coverage under the UM provisions of his policy for the death of his resident relative (minor son) resulting from a collision between a Susuki off-road motorcycle being operated by a third person and a Yamaha off-road motorcycle being operated by the named insured's minor son in an open field owned by Palm Beach County that was not a public road. *See* Carguillo 529 So.2d at 277 (*affirming* Becraft, 501 So.2d 1316 (Fla.4[th] DCA 1986) *and overruling in part,* Almgreen, 376 So.2d 1184 (Fla.2[d] DCA 1979)).

Like the accidents at issue  in Almgreen, Becraft, and Carguillo, the collision in the instant action between the off-road 4-wheeler operated by the minor Osting and the dirt bike operated by Rockhill occurred on the private property.  *See* id.  Further, the accident in Carguillo

is most like the accident that occurred in the instant action, because both[4] off-road cycles in Carguillo were designed for use mainly off public roads, were registered and titled by the State of Florida, but were not licensed for operation upon the public highways.  *See* id.  This is the exact scenario presented in the instant action.

In addition, the definitions of uninsured vehicle in the UM exclusionary clauses presented in Almgreen, Becraft, and the instant action are not unlike the definition presented in Carguillo. Specifically, as described by the Florida Supreme Court:

> In his capacity as personal representative of the estate of his son, Carguillo brought suit against the owners of the Suzuki motorcycle. The cycles were designed for use mainly off public roads, were registered and titled by the state, but were not licensed for operation upon the public highways. The Suzuki was uninsured. Suit was also brought against State Farm, Carguillo's uninsured motorist carrier. State Farm had denied coverage on the uninsured motorist portion of the claim because the Suzuki was a vehicle which was designed mainly for use off public roads and the accident occurred off public roads.  The policy exclusion at issue provides in pertinent part:
>
>> An uninsured motor vehicle does not include a land motor vehicle... (5) designed for use mainly off public roads except while on public roads.

Id. at 277. (ellipsis in original).

Moreover, in Carguillo, the Florida Supreme Court examined the definition of an uninsured vehicle and the UM exclusionary clause in conjunction with its review of the facts pertaining to the use and design of the Susuki and Yamaha cycles. *See* id. at 278.  Couching its reasoning in terms of public policy in concert with its Mullis decision, the Florida Supreme Court rejected the Second DCA's public policy rationale in Almgreen, and embraced the Fourth DCA's public policy reasoning in Becraft, and determined that the definition of "motor vehicle" under the UM exclusionary clause of the insured's policy should be read *in pari materia* with the Florida Motor Vehicle Financial Responsibility Law, section 324.021, Florida Statutes, and held that the Susuki dirt bike fell outside the penumbra of UM coverage.  *See* id.  To be sure, the

---

[4]GEICO General notes that the accidents in Almgreen and Becraft involved only one off-road vehicle designed primarily for off-road use.  *See* discussions regarding same, *supra.*

Florida Supreme Court held:

> In <u>Becraft</u>, the district court was presented with the question of "whether an uninsured motorist carrier can exclude coverage for a motor vehicle designed mainly for use off the public roads when the vehicle is being operated off the public roads at the time of the accident." 501 So.2d at 1317.  The Becrafts argued that such an exclusion is invalid because it contravenes the uninsured motorist (UM) statute itself. The district court affirmed the denial of coverage reasoning that:

> > since the use sought to be avoided by the carrier did not involve the highways, or public roads of the state, the exclusion clause at issue here is not void for public policy reasons. The policy behind section 627.727, Florida Statutes, is to provide   the insured motorist with at least the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law. <u>Mullis v. State Farm Mut. Auto. Ins. Co.</u>, 252 So.2d 229, 236 (Fla.1971). Because our motor vehicle financial responsibility law (Chapter 324, Florida Statutes) does not include off-road vehicles in its definition of motor vehicles, the carrier may exclude such vehicles when off public roads from its UM coverage without reducing such coverage below the level of protection that would have been provided if the tort-feasor had complied with the financial responsibility law. [citation omitted].

> 501 So.2d at 1317.  Carguillo urges us to reject the <u>Becraft</u> reasoning and adopt the reasoning of the second district court in <u>Allstate Ins. Co. v. Almgreen</u>, 376 So.2d 1184 (Fla.2[d] DCA 1979).

> <u>Almgreen</u> dealt with an exclusion similar to that in this case. The policy in <u>Almgreen</u> excluded from the definition of motor vehicle "a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads." 376 So.2d at 1185. Allstate claimed that the uninsured off-road motorcycle involved in the accident was not an uninsured motor vehicle under the policy. Finding the policy language ambiguous, the district court construed the policy in favor of the insured to include the off-road motorcycle as an uninsured motor vehicle. Since the court found that the policy provided coverage, it did not address whether the UM statute required coverage under the circumstances present in that case.  However, in *dicta*, the court went on to reject the contention that the definition of "motor vehicle" from the financial responsibility statute should be looked to in defining the term uninsured motor vehicle under the UM statute.  <u>Id.</u> at 1186. The court relied on its prior decision in <u>Johns v. Liberty Mut. Fire Ins. Co.</u>, 337 So.2d 830 (Fla.2[d] DCA 1976), *cert. denied,* 348 So.2d 949 (Fla.1977), in which it held that the financial responsibility laws are not to be read in pari materia to the uninsured motorist laws.

> In <u>Mullis</u> we held that "uninsured motorist coverage... is statutorily intended to

provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law." 252 So.2d at 237-38. The Becraft court correctly applied our holding in Mullis to the case at hand. We agree that Section 627.727 provides an insured motorist with *at least* the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law. 501 So.2d at 1317. As noted in Mullis, "Section 627.0851 [predecessor to Section 627.727] established the public policy of this state to be that every insured is entitled to recover for the damages he or she would have been able to recover *if the offending motorist had maintained a policy of liability insurance.*" 252 So.2d at 234.  In this case, the owner of the Suzuki motorcycle was not required to maintain liability insurance on the cycle because it is not a motor vehicle under Section 324.021 (1). Thus, the policy provision at hand does not reduce the UM coverage below the level of protection that would have been provided if the owner of the Suzuki had complied with the financial responsibility law. While an insurer may provide more coverage than is statutorily required, there is no requirement that an insured be protected to a greater extent than that statutorily mandated. We therefore hold that a vehicle designed primarily for off-road use can be excluded from uninsured motorist coverage because it is not a "motor vehicle" within the definition of the financial responsibility law. Accordingly, we approve the decision below and disapprove the decision of the Second District Court of appeal in Almgreen to the extent that it conflicts with this opinion.

Carguillo, 529 So.2d at 277-278 (*affirming* Becraft, 501 So.2d 1316 (Fla.4th DCA 1986) *and overruling in part,* Almgreen, 376 So.2d 1184 (Fla.2d DCA 1979)). (emphasis and parenthetical references supplied). (citation omitted in original). (ellipsis in original).

Germane to the Court's determination in the instant action is the important distinction that the Florida Supreme Court disapproved Almgreen only to the extent that it conflicts with Carguillo.  *See* id. In other words, Carguillo overrules Almgreen with respect to the Second DCA's incorrect public policy reasoning that an off-road motorcycle *itself* falls within the ordinary meaning of "motor vehicle," and therefore, is construed in favor of the insured so as to include off-road motorcycles within the meaning of the term, "*uninsured* motor vehicle," under the UM provisions of the policy.  *See* id.

However, Carguillo does not overrule Almgreen with regard to the Second DCA's determination that off-road motorcycles fall within the reach of an exclusionary clause that contains the phrase, ***"a farm type tractor or equipment designed for use principally off public roads,"*** and therefore are excluded from the definition of "motor vehicle" under the UM

provisions of a personal automobile liability policy *because the phrase is to be interpreted as excluding (farm type tractors), or (equipment designed for off-road use), and that off-road motorcycles are "equipment designed for off-road use."*

Accordingly, applying <u>Carguillo</u> and this intact part of <u>Almgreen</u> to the instant action, as a matter of law, this Court must find that the exclusionary clause at issue excludes (a farm type tractor), or (equipment designed for use principally off public roads) from the definition of "uninsured auto" under the UM provisions of the Counter-Petitioners' policy and that Rockhill's dirt bike is "equipment designed for use principally off public roads," and therefore, Rockhill's dirt bike is excluded from coverage under the UM provisions of the Counter-Petitioners' policy.

Moreover, because the undisputed facts show that Rockhill's dirt bike is "designed for use principally off public roads," and therefore no liability bond need be (or in fact was) carried on this type of vehicle, the same is not a "motor vehicle" within the definition of the Florida Motor Vehicle Financial Responsibility Law, section 324.021, Florida Statutes (2004). Accordingly, this Court should construe and interpret the instant UM exclusionary clause *in pari materia* with the definition of "motor vehicle" from the Florida Motor Vehicle Financial Responsibility Law, section 324.021, Florida Statutes (2004), and hold that GEICO General can exclude Rockhill's dirt bike from coverage under the UM provisions of the Counter-Petitioners' policy because the same encompasses and therefore excludes Rockhill's dirt bike as a matter of law without running afoul of the doctrine set forth in <u>Mullis</u>, 252 So.2d 229 (Fla.1971) and reaffirmed in <u>Carguillo</u>, 529 So.2d  276 (Fla.1988)(*affirming* <u>Becraft</u>, 501 So.2d 1316 (Fla.4[th] DCA 1986) *and overruling in part,* <u>Almgreen</u>, 376 So.2d 1184 (Fla.2[d] DCA 1979)).

## CONCLUSION

Based on the foregoing, GEICO General respectfully requests that this Court enter Summary Judgment in its favor and against Osting and against Schwinn in the instant action, and grant the declaratory relief requested in the Petition [Dkt.#25], and deny the declaratory relief requested in the two Counter-Petitions [Dkt.#26] and [Dkt.#27] to the extent that the same are inconsistent with the relief requested in the Petition [Dkt.#25].

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 6th day of June, 2005, a true copy of the foregoing was submitted electronically via the Court's CM/ECF system, which in turn will transmit service of an electronic copy of the same to: Dale M. Swope, Esq., Lisha Bowen, Esq., and Kathryn Lee, Esq., Swope, Rodante, P.A., 1234 5th Avenue, Tampa, FL 33605 and Jason C. Mulholland, Esq., Mulholland Law, P.A., 2701 W. Busch Blvd., Suite 202, Tampa, FL 33618; I further certify that true copy of the within document was served upon the foregoing person(s) via U.S. Mail.

<u>    s/ STEPHEN D. GILL    </u>
**B. RICHARD YOUNG**
Florida Bar No.: 442682
**STEPHEN D. GILL**
Florida Bar No.: 542091
Young, Bill, Fugett & Roumbos, P.A.
Post Office Drawer 1070
Pensacola, Florida  32591-1070
Telephone: (850) 432-2222
Facsimile: (850) 432-1444
Attorneys for Defendant GEICO
General Insurance Company

SDG/1001.668