UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEICO GENERAL INSURANCE
COMPANY,

     Plaintiff/Counterdefendant.,

v.                         CASE NO.  8:04-CV-1485-T-17TBM

CAROL OSTING SCHWINN,
etc., et al.,

     Defendant/Counterplaintiff.

_____/

ORDER

     This cause is before the Court on:

     Dkt. 30 Motion for Summary Judgment - Carol Osting Schwinn
     Dkt. 33 Motion for Summary Judgment - Frederick Schwinn
     Dkt. 34 Motion for Summary Judgment - GEICO

     This case is a request for a declaratory judgment that there is no uninsured motorist coverage available under the applicable insurance policy for the injuries Cody Osting sustained on May 7, 2002 when his "off-road 4-wheeler" collided with the "dirt bike" operated by Michael D. Rockhill on Narron Lane, Plant City, Florida.

     Defendants have filed a counterclaim for uninsured motorist benefits and seek declaratory judgment that there is coverage for the accident, and for attorney's fees.

Case No. 8:04-CV-1485-T-17TBM

I.  Standard of Review

     Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56 c.

> The plain language of Rule 56 c mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

     Issue of fact are genuine only if a reasonable jury considering the evidence presented could find for the non-moving party. (Citation omitted).  Material facts are those which will affect the outcome of the trial under governing law.  In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the non-moving party.  See Sweat v. The Miller Brewing Co., 708 F.2d 655m 656 (11th Cir. 1983).  All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. See Hayden v. First Nat'l Bank of Mt. Pleasant, 595 F.2d 994, 996-7 (5th Cir. 1979).

Case No. 8:04-CV-1485-T-17TBM


II.  Facts

1.  Insurance Policy No. 336-70-38 states:


**Section IV - Uninsured Motorist Coverage**

**...**

**DEFINITIONS**

**...**

6. "Uninsured auto" is an auto:

    (a)  which has no liability bond or insurance
          policy applicable with liability limits
          complying with the Financial Responsibility
          Law of the **state** in which the **insured auto** is
          principally garaged at the time of the accident;
          or

    (b)  for which the total of all bodily injury liability
          insurance in the event of an accident is less than
          the damages sustained in an accident by an
          **insured**; or

    c   a **hit-and-run auto**.
   ...

The term "**uninsured auto**" does not include:

    (e)  a farm-type tractor or equipment designed for
          use principally off public roads, except while
          used upon public roads.

**LOSSES WE PAY**

Under the Uninsured Motorists coverage we will pay
damages for *bodily injury* caused by an accident which
the *insured* is legally entitled to recover from the
owner or operator of an *uninsured auto* arising out of
the ownership, maintenance or use of that auto.
.....

3

Case No. 8:04-CV-1485-T-17TBM

> **EXCLUSIONS**
>
> **When Section IV Does Not Apply**
>
> **...**
>
> **2.** *Bodily injury* to an **insured** while *occupying* or when struck by any motor vehicle or motorcycle owned by an **insured** or a **relative**, which is not insured under the Liability Coverages section of this policy, is not covered.

2.   The insurance policy states (Sec. V., Par. 16):

> Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

3.   The insurance policy was in effect from December 19, 2001 to June 19, 2002.  It is undisputed that Cody Osting is an insured under the policy since he is a relative and resided with the named insureds at time of the accident.

4.   The accident in which Cody Osting was injured took place on May 7, 2002, when Cody Osting was operating a four-wheeled, off-road vehicle, (an "ATV") on Narron Lane in Plant City, Florida.

5.   In the accident, Cody Osting collided with an off-road competition motorcycle, a "dirt bike" that was owned and operated by Michael D. Rockhill. Jr.

Case No. 8:04-CV-1485-T-17TBM

6.  Cody Osting's ATV was designed principally for use off public roads, had no tag, had no insurance, and was not licensed for operation upon the public highways by the State of Florida or any other governmental entity.

7.  Michael Rockhill, Jr.'s dirt bike was designed principally for use off public roads, had no tag, and was not licensed for operation on the public highways by the State of Florida or any other governmental entity.

8.  Michael D. Rockhill, Jr.'s dirt bike had no liability bond and had no insurance policy with liability limits complying with the Florida Motor Vehicle Financial Responsibility Law in effect at the time of the accident.

9.  Michael Rockhill, Jr.'s dirt bike was not designed to be used as farm equipment and was not actually used by Mr. Rockhill for farming or any other work purpose.

10.  Narron Lane is a privately-owned, unpaved road that is not owned or maintained by Plant City, Hillsborough County, or the State of Florida.

III.  Discussion

This case requires the Court to construe the insurance policy under which coverage is sought.  Construction of an insurance policy is a question of law for the Court.

Case No. 8:04-CV-1485-T-17TBM

A.  General Principles

      In construing an insurance policy, "a court must first
examine the natural and plain meaning of a policy's language."
See Key v. Allstate Ins. Co., 90 F.3d 1546, 1548-49) (11th Cir.
1996).  A court should read an insurance policy as a whole, and
endeavor to give each provision its full meaning and operative
effect."  See Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986
F.2d 1379, 1381 (11th Cir. 1993).  Where the existence or non-
existence of coverage is clear from the unambiguous terms of the
policy, the court must give those terms the effect their plain
meaning dictates.  See Key, 90 F.3d at 1549.

      Where the language in an insurance policy is subject to
differing interpretations, the policy language "should be
construed liberally in favor of the insured and strictly against
the insurer."  State Farm Fire and Cas. Co. v. CTC Dev. Corp.,
720 So.2d 1072, 1076 (Fla. 1998); Auto-Owners Ins. Co. v.
Anderson, 756 So.2d 29, 34 (Fla. 2000). "[I]f the relevant policy
language is susceptible to more than one reasonable
interpretation, one providing coverage and the other limiting
coverage, the insurance policy is ambiguous."  Auto-Owners, 756
So.2d at 34.  Policy provisions that tend to limit or avoid
liability are interpreted liberally in favor of the insured and
strictly against the drafter who prepared the policy, and
exclusions to coverage are construed even more strictly against
the insurer than coverage clauses.  See Id.  However, [o]nly when
a genuine inconsistency, uncertainty or ambiguity in meaning
remains after resort to ordinary rules of construction is the
rule apposite.  It does not allow courts to rewrite contracts,
add meaning that is not present, or otherwise reach results

6

Case No. 8:04-CV-1485-T-17TBM

contrary to the intentions of the parties." <u>See</u> <u>Deni Associates</u>
<u>of Florida, Inc. V. State Farm Fire and Cas. Ins. Co.</u>, 711 So.2d
1135 (Fla. 1998).  Where a contract of insurance is entered into
on a matter surrounded by statutory limitations and requirements,
the parties are presumed to have entered into the [the contract]
with reference to the statute, and the statutory provisions
become a part of the contract." <u>See</u> <u>Standard Marine Insurance</u>
<u>Co. v. Allyn</u>, 333 so.2d 497 (Fla. 1st DCA 1976).

B.  Uninsured Motorist Coverage

     Under Florida's No-Fault Law, motor vehicle owners or
registrants of covered motor vehicles must carry insurance
coverage for medical, surgical, funeral and disability benefits.
Sec. 627.730 to Sec. 627.7405, <u>Fla</u>. <u>Stat</u>.  Sec. 627.732 defines
"motor vehicle" as:

          "any self-propelled vehicle with four or
          more wheels which is of a type both designed
          and required to be licensed for use on the
          highways of the state and any trailer or
          semitrailer for use with such vehicle and
          includes:

          (a) A "private passenger vehicle," which is a
          sedan, station wagon, or jeep-type vehicle
          and, if not used primarily for occupational,
          professional, or business purposes, a motor
          vehicle of the pickup, panel, van, camper, or
          motor home type;

          (b) A "commercial motor vehicle," which is
          any motor vehicle which is not a private
          passenger motor vehicle.

          The term "motor vehicle," does not include a
          mobile home or any motor vehicle which is

7

Case No. 8:04-CV-1485-T-17TBM

> used in mass transit, other than public
> school transportation, and designed to
> transport more than five passengers exclusive
> of the operator of the motor vehicle and
> which is owned by a municipality, a transit
> authority, or a political subdivision of the
> state.

Florida's Financial Responsibility law, Sec. 324.021, <u>Fla.</u> <u>Stat</u>., identifies the minimum liability insurance requirements applying to exercise of the privilege of driving on Florida's public streets and highways.  The Financial Responsibility law defines "motor vehicle" as follows:

> (1) **Motor Vehicle**.–Every self-propelled
> vehicle which is designed and required to be
> licensed for use upon a highway, including
> trailers and semitrailers designed for use
> with use with such vehicles, except traction
> engines, road rollers, farm tractors, power
> shovels, and well drillers, and every vehicle
> which is propelled by electric power from
> overhead wires but not operated upon rails,
> but not including any bicycle or moped.
> However, the term "motor vehicle" shall not
> include any motor vehicle as defined in s.
> 627.732(3) when the owner of such vehicle has
> complied with the requirements of ss.
> 627.730-627-7405, inclusive, unless the
> provision of 345.051 apply; and, in such
> case, the applicable proof of insurance
> provisions of s. 320.02 apply.

Motor vehicle owners and registrants may purchase uninsured motorist coverage.  Uninsured motorist insurance is a limited form of coverage which protects injured persons by providing a source of financial responsibility for the uninsured or underinsured tortfeasor.  Florida law requires that every insurer doing business must offer and make available to its automobile

8

Case No. 8:04-CV-1485-T-17TBM

liability policyholders uninsured motorist ("UM") coverage in an amount equal to the policyholder's automobile liability insurance.  Once the offer of UM coverage is made, the policyholder has the option of rejecting it.  If it is accepted, the policyholder pays an additional premium for it.  Sec. 627.727, <u>Fla</u>. <u>Stat</u>., controls uninsured vehicle coverage.

S. 627.727 identifies the term "uninsured motor vehicle":

> (3) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle when the liability insurer thereof:
>
> (a) Is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency;
>
> (b) Has provided limits of bodily injury liability for its insured which are less than the total damages sustained by the person legal entitled to recover damages; or
>
> c) Excludes liability coverage to a nonfamily member whose operation of an insured vehicle results in injuries to the named insured or to a relative of the named insured who is a member of the named insured's household.
> ....
>
> (9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the department establishing that if the insured accepts this offer:

Case No. 8:04-CV-1485-T-17TBM

(a) The coverage provided as to two or more
motor vehicles shall not be added to together
to determine the limit of insurance coverage
available to injured person for any one
accident, except as provided in paragraph c.

(b) If at the time of the accident the
injured person is occupying a motor vehicle,
the uninsured motorist coverage available to
her or him is the coverage available as to
that motor vehicle.


c) If the injured person is occupying a motor
vehicle which is not owned by her or him or
by a family member residing with her or him,
the injured person is entitled to the highest
limits of uninsured motorist coverage
afforded for any one vehicle as to which she
or he is a named insured or insured family
member.  Such coverage shall be excess over
the coverage on the vehicle the injured
person is occupying.

(d) The uninsured motorist coverage provided
by the policy does not apply to the named
insured or family members residing in her or
his household who are injured while occupying
any vehicle owned by such insured for which
uninsured motorist coverage was not
purchased.

(e) If, at the time of the accident, the
injured person is not occupying a motor
vehicle, she or he is entitled to select any
one limit of uninsured motorist coverage for
any one vehicle afforded by a policy under
which she or he is insured as a named insured
or as an insured resident of the named
insured's household."

....

Case No. 8:04-CV-1485-T-17TBM

The purpose of uninsured motorist coverage is to provide uniform and specific benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists.  See <u>Mullis v. State Farm Mutual Automobile Ins. Co.</u>, 252 So.2d 229 (Fla. 1971).  The Florida Supreme Court has found that the function of uninsured motorist coverage is to provide protection for an insured in only those instances in which a tortfeasor does not maintain at least the minimum liability coverage provided by Florida's Financial Responsibility law:

> "We agree that Section 627.727 provides an insured motorist with **at least** the same amount of protection as would have been provided if the tort-feasor had complied with the financial responsibility law."

See <u>Carquillo v. State Farm Automobile Ins. Co.</u>, 529 So.2d 276 (Fla. 1988)(overruling <u>Allstate Insurance Co. V. Almgreen</u>, 376 So.2d 1184 (2d DCA 1979) to the extent it conflicts with <u>Carquillo</u>).

S. 316.2074, <u>Fla</u>. <u>Stat</u>. addresses "All-terrain vehicles" ("ATV's").  The statute defines "all-terrain vehicle" as:

> "any motorized off-highway vehicle 50 inches (1270 mm) or less in width, having a dry weight of 600 pounds (273 kg) or less, traveling on three or more low pressure tires, designed for operator use only with no passengers, having a seat or saddle designed to be straddled by the operator, and having handlebars for steering control."

Case No. 8:04-CV-1485-T-17TBM

S. 316.2074, Fla. Stat., is a traffic control statute which was adopted to provide safety protection to minors while operating an all-terrain vehicle in Florida.

C.  The Insurance Policy

     The Court has examined the definitions in Defendants' insurance policy.   The Section I Definitions (Liability Coverage) do not define "motor vehicle" but include a definition of "owned auto" and "non-owned auto."   The Section II Definitions (Personal Injury Protection Coverage and Automobile Medical Payments) define "insured motor vehicle" and "motor vehicle."   The Section III Definitions (Uninsured Motorists Coverage) do not define "motor vehicle" but include definitions of "insured auto" and "uninsured auto."

     In Grant v. State Farm Fire and Cas. Co., 638 So.2d 936 (Fla. 1994), the Florida Supreme Court said that while courts will strive to interpret an insurance policy based on the definitions within the policy, if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition.  In Grant, the Florida Supreme Court construed the term "motor vehicle" for purposes of the "other owned vehicle" exclusion to uninsured motorist coverage.  The Court found that the definition of "motor vehicle" within the PIP provisions of the insurance policy was not relevant to the exclusions discussed in the uninsured motorists section.  The Florida Supreme Court concluded that the definition of "motor vehicle" found in the Financial Responsibility Law was the relevant definition.

Case No. 8:04-CV-1485-T-17TBM

In <u>Allstate Insurance Company v. Almgreen</u>, 376 so.2d 1184
(2d DCA 1979), the Second District Court of Appeal found that the
insurance policy provided uninsured motorist coverage for
accidents with "uninsured motor vehicles", defined as:

> A motor vehicle with respect to the
> ownership, maintenance or use of which there
> is, in at least the amounts specified by the
> Financial Responsibility Law of the state in
> which the insured automobile is principally
> garaged, no bodily injury liability bond or
> insurance policy applicable at the time of
> the accident....

The insurance policy further excluded from the motor vehicle
definition "a farm type tractor or equipment designed for use
principally off public roads, except while actually upon public
roads."  The Second District Court of Appeal found that the
exclusion was ambiguous, and therefore construed it provide
coverage.  The Second District Court of Appeal also considered
whether an off-road motorcycle is a motor vehicle.  The insurance
policy contained no definition, and the Court looked to its
ordinary meaning.  The Second District Court of Appeal further
noted that the Financial Responsibility Laws are not to be read
<u>in</u> <u>pari</u> <u>materia</u> to the uninsured motorist laws, a finding which
was overruled in <u>Carquillo</u>, <u>supra</u>.

D.  The Cody Osting Vehicle

It is undisputed that Cody Osting was operating a four-
wheeled ATV at the time of the collision with the Rockhill "dirt
bike."  He was not a pedestrian at the time of the accident.
Cody Osting's ATV is designed principally for use off public

13

Case No. 8:04-CV-1485-T-17TBM

roads, did not have a tag, and was not licensed for use on the public highways of Florida.

In interpreting the insurance policy, the Court notes that motor vehicle insurance is an area that is "surrounded by statutory limitations."  The Court therefore presumes that the parties entered into the contract with knowledge of the statutory provisions, and those provisions became a part of the contract.

Some states require that ATV's carry insurance.  The only Florida statute of which the Court is aware is a traffic statute, and that statute defines the ATV as an off-road vehicle.  The ATV is not within the definition of "insured auto" in the UM coverage section of Section IV of the insurance policy (Sec. 3), as it is not described in the declarations and covered by Bodily Injury Liability coverage of the policy.  The ATV is also excluded from the statutory definition of "motor vehicle" found in Florida's Financial Responsibility law because it is not designed for use on public highways.  The ATV is not required to carry liability insurance, and therefore no insurance carrier offered UM coverage to its owner.  S. 627.727 (9)(d) states that if an insured is occupying any vehicle for which no UM coverage is purchased, there is no coverage available for that vehicle.  Since the ATV is not listed as a vehicle insured by the policy under which the UM benefits are sought, and no separate premium was paid for UM coverage, there is no UM coverage available.

Case No. 8:04-CV-1485-T-17TBM

E.   The Rockhill Vehicle

It is undisputed that, at the time of the accident, the Rockhill "dirt bike" was designed principally for use off public roads, did not have a tag, and was not licensed for use on the public highways of Florida.  The definition of "uninsured auto" within the insurance policy includes an auto which does not have a bond or insurance policy with liability limits complying with Florida's Financial Responsibility Law.

Defendants have argued that the exclusionary clause of the insurance policy is ambiguous and therefore Almgreen requires the Court to find that uninsured motorist coverage is available. Exclusions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, but this rule only applies when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.  See Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Company, 711 So.2d 1135 (Fla. 1998).  Ambiguity is not invariably present when analysis is required to interpret the policy.  See Weldon v. All American Life Insurance Co., 605 So.2d 911 (Fla. 2d DCA 1992).  Where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute and the statutory provisions become a part of the contract.  See Standard Marine Ins. Co. v. Allyn, 333 So.2d 497 (Fla. 1st DCA 1976).  The applicable insurance policy provides that any terms in the insurance policy which conflict with the Florida statutes are amended to conform to the statutes.

Case No. 8:04-CV-1485-T-17TBM

     In Section IV of the insurance policy, "LOSSES WE PAY", the
insurer agrees to pay for damages for bodily injury which the
insured is legally entitled to recover from the owner or operator
of an "uninsured auto" arising out of the ownership, maintenance
or use of that auto.  In this case, the "uninsured auto" is the
Rockhill dirt bike.   After consideration of the term "uninsured
auto" in the policy and in the Florida statutes, the Court
concludes there is no real ambiguity in that term.  Even though
the same language of the Almqreen exclusionary clause is present
in the insurance policy in this case, no genuine inconsistency
remains after considering the definition within the Financial
Responsibility statute, and therefore it is not necessary to
construe the exclusionary clause.  In Carquillo, supra, the Court
recognizes that the Florida Supreme Court construed a different,
more broad exclusionary clause.  In that case the Florida Supreme
Court answered the question of "whether a vehicle designed
primarily for off-road use can be excluded from uninsured
motorist coverage because it is not a "motor vehicle" within the
definition of the Financial Responsibility Law or whether such an
exclusion is void for public policy reasons?"
The Florida Supreme Court overruled Almqreen's rejection of the
contention that the definition of "motor vehicle" from the
financial responsibility statute should be looked to in defining
the term uninsured motor vehicle under the UM statute.

     After consideration, the Court finds that the term
"uninsured auto" should be accorded its plain meaning as defined
in the insurance policy as conformed to the Florida statutes in
effect at the time of the accident.  The coverage provision
specifically refers to the requirements of the Financial
Responsibility Law, and the statutory definition therein is a

Case No. 8:04-CV-1485-T-17TBM

binding term of the insurance policy.  The Rockhill "dirt bike"
is not a "motor vehicle" within the statutory definition in S.
324.021, <u>Fla</u>. <u>Stat</u>., and as such was not required to carry the
minimum amount of liability insurance.  Since the dirt bike was
not required to carry  liability insurance, the dirt bike could
never be an "uninsured auto" for purposes of the UM coverage in
Section IV of the policy while it was operated on private
property.

Insurance companies may limit coverage as long as the
limitation conforms to the law and is not contrary to public
policy.  The public policy behind the Financial Responsibility
Law is the protection of vehicle owners and registrants who drive
on Florida's public highways.  That public policy is not
implicated here.  Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.
30) is **denied**; Defendant's Motion for Summary Judgment is **denied**;
and Plaintiff's Motion for Summary Judgment (Dkt. 34) is **granted**.
The Clerk of Court shall enter judgment for Plaintiff GEICO on
the Complaint and for Counterdefendant GEICO on the Counterclaim.

Case No. 8:04-CV-1485-T-17TBM

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 30th day of May, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All
parties and counsel of record